EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL A. DELGADO TERRÓN, acusado y apelante.

*Número:* CR-70-153      *Resuelto:* 15 de octubre de 1971

*Pedro Pérez Rodríguez,* abogado del apelante; *Gilberto Gierbolini, Procurador General, J. F. Rodríguez Rivera, Subprocurador General,* y *Jorge Ríos Torres, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El apelante fue convicto de conducir un vehículo mientras estaba bajo los efectos de bebidas embriagantes, en violación de la Ley de Vehículos y Tránsito, Ley Núm. 141 de 20 de julio de 1960, 9 L.P.R.A. sec. 1041.

En apelación señala tres errores. El primero es al efecto de que erró el tribunal de instancia al no desestimar la acusación por no habérsele celebrado el juicio dentro de los 120 días siguientes a la fecha en que se presentó la acusación. Regla 64 (n) (4) de las de Procedimiento Criminal. Sec. 11, Art. II de la Constitución de Puerto Rico.

Como transcurrieron siete meses y dieciocho días entre la fecha en que se presentó la acusación y la fecha en que se celebró el juicio, dicho primer planteamiento merecería detenida consideración a no ser por las circunstancias que a continuación expresamos.

La acusación se presentó en 22 de abril de 1969 y el juicio fue señalado para el 11 de julio del mismo año, fecha comprendida dentro de los 120 días de presentada la acusación. A solicitud de la defensa el juicio fue suspendido y señalado por segunda vez para el 19 de septiembre de 1969. Este segundo señalamiento fue suspendido a petición del fiscal, por motivo de estar ausente la química que analizó la muestra de sangre del acusado. En esa ocasión el tribunal fue informado por el alguacil que dicha técnica se encontraba en funciones oficiales en el Tribunal de Ponce. Este caso se estaba viendo en Arecibo. El juicio fue señalado por tercera vez para el 29 de octubre de 1969 y suspendido también a solicitud del fiscal debido a enfermedad del policía José Álvarez, quién arrestó al acusado y quién era un testigo de cargo importante.

Confrontado con esa situación el juez expresó que el juicio ya se había suspendido dos veces; una, a solicitud del acusado y otra, a solicitud del fiscal y preguntó que para qué día se podía señalar. La defensa contestó que "El problema es el de la química." El juez expresó que en vista de lo informado por el fiscal—la ausencia por enfermedad del policía Álvarez —se veía obligado a suspender la vista y dialogó con la química para ver en qué fecha ésta podría venir al juicio. La química expresó que tenía disponible el día 19 de noviembre y la defensa dijo que también estaba libre ese día. En ese

momento la secretaria del tribunal llamó la atención a que ese día era festivo por ser el día del Descubrimiento de Puerto Rico. El abogado defensor dijo *"En diciembre, cualquier fecha."* (Bastardillas nuestras.) La química preguntó si estaría bien el día 10 de diciembre. El juez aceptó la fecha y la defensa expresó *"[y]o acepto cualquier fecha que señale el Tribunal."* (Bastardillas nuestras.) El juez dijo que había escogido dicha fecha y la defensa dijo *"Yo estoy de acuerdo con la fecha."* (Bastardillas nuestras.) El juez señaló la vista para dicho día 10 de diciembre de 1969.

■ Ante esa clara y expresa renuncia del apelante de su derecho a levantar el fundamento, para solicitar la desestimación, de no habérsele sometido a juicio dentro de los 120 días siguientes a la presentación de la acusación, no podemos convenir con él en que se cometió el primer error señalado.

En su segundo señalamiento de error arguye el apelante que erró el tribunal al admitir en evidencia el informe sobre la sangre porque el doctor que declaró en el juicio no fue la persona que le sacó la sangre al acusado y sí una enfermera de cuyo nombre el doctor no se acordaba. El apelante no argumenta este error ni expresa nada más en relación con el mismo.

■ Es cierto que el médico no recordaba el nombre de la enfermera pero también es cierto que declaró que estaba positivamente seguro de que era una enfermera graduada que estaba en servicio. La ley no exige que sea el médico personalmente el que haga esas extracciones de sangre. La propia Ley de Vehículos y Tránsito autoriza a las enfermeras graduadas a extraer muestras de sangre para determinar su contenido alcohólico. 9 L.P.R.A. sec. 1043(g). En este caso el médico estuvo presente cuando se le sacó la sangre al apelante y supervisó esa operación. Fue el médico personalmente quien envasó la sangre en tres tubos. Le entregó uno al apelante y envió los otros dos al Departamento de Salud. Fue el médico también quien llenó y firmó el parte de remisión. Sobre el

nombre de la enfermera, aunque el doctor no lo recordaba, indicó que podía conseguirse del récord de esa noche.

■ El médico podía declarar sobre el acto de la extracción de sangre que él presenció y que supervisó pues, como se sabe, un testigo puede declarar sobre hechos que le constan personal y directamente, 32 L.P.R.A. sec. 1662, y la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo en casos de perjurio o de traición, 32 L.P.R.A. sec. 1661. No se cometió el segundo error señalado.

El tercer error impugna la apreciación que de la prueba hizo el tribunal de instancia. Argumenta que el acusado se comportó correctamente y que no dijo palabras obscenas; que el policía se contradijo y que al apelante le entregaron su automóvil una hora después y le permitieron que se lo llevara.

■ El doctor declaró que notó que el apelante había ingerido alguna bebida alcohólica. El apelante declaró que se había "dado unas cuantas cervezas." Mientras conducía su automóvil el apelante fue observado desviándose entre carriles; pasó una luz roja; no respondió a la señal de la sirena de la policía; declaró que no oyó la sirena; una vez detenido se negó a salir del vehículo; el policía lo sacó del mismo. El policía declaró además que el apelante hablaba en forma pesada, que tenía los ojos rojizos, que le salía aliento a licor y que al caminar tenía que sujetarse.

Completa el anterior cuadro de hechos el dato de que el análisis de la sangre demostró que tenía 16 centésimas del uno por ciento, por peso de alcohol. La ley dispone que cuando hay cinco centésimas del uno por ciento, o menos, se presumirá que el acusado no estaba bajo los efectos de bebidas embriagantes. Cuando hay más de 5 centésimas del uno por ciento, pero menos de 15 centésimas, tal prueba no constituirá base para presumir que el acusado estaba o no bajo los efectos de bebidas embriagantes, pero dicha prueba podrá ser considerada conjuntamente con otra evidencia para determinar la

culpabilidad o inocencia del acusado. Pero cuando el análisis demuestra que había en la sangre del acusado 15 centésimas del uno por ciento, o más, por peso de alcohol, se presumirá que el acusado estaba bajo los efectos de bebidas embriagantes. 9 L.P.R.A. sec. 1041. Como dijimos, el examen de la sangre del acusado dio un resultado de 16 centésimas del uno por ciento.

■ En cuanto a los otros argumentos, ya hemos resuelto que portarse correctamente y no decir palabras obscenas no prueba de por sí que una persona no está ebria. Distintas personas reaccionan distintamente al alcohol. Véase *Pueblo v. Díaz Torres*, 89 D.P.R. 720, 734 (1963) y *Pueblo v. Candelario Martínez*, 96 D.P.R. 581, 583 (1968). En ausencia de prueba clínica—en este caso la hay—para formar juicio sobre si una persona está ebria o no, es necesario tomar en cuenta las diversas circunstancias concurrentes. El hecho de que le entregaron el carro al acusado una hora después de haber sido detenido es un dato del cual puede presumirse que para ese tiempo ya estaba más o menos normal, o que alguien lo creyó así. La realidad es que una hora antes su sangre contenía 16 centésimas del uno por ciento, por peso, de alcohol.

La prueba es suficiente y no hay razón para que intervengamos con la apreciación que de ella hizo el tribunal de instancia. Tampoco se cometió el tercer error señalado.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de Arecibo, en 10 de diciembre de 1969, en este caso.*

El Juez Presidente Señor Negrón Fernández no intervino.