

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| EL Pueblo de Puerto Rico<br><br>        Peticionario<br><br>              v.<br><br>Efraín Rivera Santiago<br><br>        Recurrido | Certiorari<br><br>2009 TSPR 136<br><br>176 DPR ____ |

Número del Caso: CC-2007-459

Fecha: 24 de agosto de 2009

Tribunal de Apelaciones:

        Región Judicial de Mayagüez y Aibonito Panel VII    I

Juez Ponente:

        Hon. Aleida Varona Méndez

Oficina del Procurador General:

        Lcdo. Reinaldo Camps del Valle

Abogado de la Parte Recurrida:


        Lcdo. Antonio Martínez Vargas

Materia: Civil

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correcciones del pr    oceso de compilación y publicación oficial de las decisiones    del Tribunal. Su distribución electrónica se hace como un servicio p    úblico a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

        v.

Efraín Rivera Santiago

     Recurrido

Certiorari

CC-2007-0459

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico, a 24 de agosto de 2009.

En el presente recurso se nos solicita la revocación de una Sentencia emitida por el Tribunal de Apelaciones. En virtud de dicho dictamen, el foro apelativo intermedio confirmó una determinación del Tribunal de Primera Instancia, emitido en corte abierta, mediante el cual se desestimaron las acusaciones contra el recurrido al amparo de la Regla 64(n)(4) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Los foros *a quo* determinaron, que como no se encontraban presentes en el tribunal todos los testigos de cargo el último día de los términos de juicio rápido, dicha ausencia constituía una violación al debido proceso de ley del acusado. Para principiar

nuestro análisis, expondremos los hechos que dieron génesis a la actual controversia.

## I.

Por hechos acaecidos el 30 de enero de 2003, se presentaron dos denuncias contra Efraín Rivera Santiago (en adelante, el recurrido) por alegada violación a los Artículos 131(c) y 173 del Código Penal de 1974, sobre restricción de la libertad y robo, respectivamente. 33 L.P.R.A. secs. 4172, 4279 (ed. 2001).[1] Según se desprende de las denuncias, el recurrido se apropió maliciosamente, mediando violencia e intimidación, de la suma de seiscientos dólares ($600.00) pertenecientes al señor Eli César Sálamo Pérez y además, actuando en forma ilegal, voluntaria, maliciosa, a sabiendas y con intención criminal, restringió la libertad del señor Sálamo. El 27 de febrero de 2004 se determinó causa para acusar al recurrido una vez concluida la vista preliminar. El 17 de marzo de 2004, el Ministerio Público presentó acusaciones contra el recurrido por infracción a las mencionadas disposiciones del Código Penal de 1974. El acto de lectura de acusación se realizó el 5 de abril de 2004.

Durante casi dos años, el proceso fue protagonizado por una serie de inconvenientes que hicieron del trámite judicial uno atropellado.[2] Ante tal situación, el Tribunal de Primera

---

[1] Las denuncias fueron presentadas el 31 de enero de 2003. Es decir, al día siguiente de los hechos que motivaron la intervención.

[2] Desde el 17 de marzo de 2004 hasta el 6 de marzo de 2006, hubo una serie de vistas que fueron suspendidas por razones diversas. Por ejemplo, el Ministerio Público no había contestado el descubrimiento de prueba bajo la Regla 95 de Procedimiento Criminal, *supra*; la prueba del Ministerio Público no estaba completa; la defensa anunció su voluntad de que el caso

Instancia decretó la desestimación de las acusaciones bajo la Regla 64(n)(4) de Procedimiento Criminal, *supra*. El Ministerio Público, en el descargo de sus responsabilidades y a tenor con la Regla 68 de Procedimiento Criminal, *supra*, presentó nuevas acusaciones por los mismos delitos en contra del recurrido.

El 7 de marzo de 2006, el Ministerio Público volvió a presentar ambas acusaciones contra el recurrido y al día siguiente (8 de marzo de 2006), se celebró la vista de lectura de acusación, como parte de la segunda instancia procesal promovida por el Ministerio Público. Luego de que el recurrido hiciera alegación de no culpabilidad, el juicio en su fondo fue señalado para el 19 de abril de ese mismo año. Llegada la fecha del juicio, según surge de la Minuta del Tribunal de Primera Instancia, la defensa expresó su deseo de hacer valer el derecho a juicio por jurado. No obstante, arguyó que no estaban disponibles los paneles de jurado, ni algunos testigos, por lo que expresó **que se allanaba a otro señalamiento, si se estipulaba que sería el último dentro del término de juicio rápido.** Por su parte, el Ministerio Público tampoco contaba con la presencia de todos los testigos, cuyos testimonios se proponía ofrecer en evidencia.[3] A la luz de tales planteamientos, la vista fue reseñalada para el 21 de agosto de 2006 y el Tribunal de Primera Instancia expresó que sería la **última** fecha del término a juicio rápido.

---

se ventilara por jurado; los paneles de los jurados no estaban completos; *inter alia*.

[3] No comparecieron tres de los testigos de la prueba de cargo, a saber: los agentes Félix Santiago, Iván Vega y Damaris Pérez. Sobre ésta última se informó su indisponibilidad por razón de enfermedad.

Así las cosas, llamadas las causas el día del juicio, el 21 de agosto de 2006, trascendieron unos incidentes que conforme la Minuta correspondiente a esa fecha transcribimos *in extenso*:

"A la vista en su fondo por jurado comparece el acusado personalmente, representado por el Lcdo. Antonio Martínez Vargas y el Lcdo. Armando F. Pietro Torres. El Ministerio Público comparece representado por el Fiscal Carlos González López.

Se encuentran disponibles el Sgto. Luis R. Feliciano Santiago y el Tnte. Iván De Jesús, no ha comparecido el resto de la prueba.

**Informa el Ministerio Público que vería el caso con los testigos disponibles y que se activen las presunciones de ley a lo que se opone la Defensa ya que estos casos se desestimaron una vez por similares circunstancias, solicita la desestimación.**

Comparece a la Sala la Tnte. Mildred Martínez e informa sobre las gestiones hechas en el día de hoy para la comparecencia de los testigos. Indica que la Tnte. Elsie Miranda se encuentra en Estados Unidos, el Sgto. Luis R. Feliciano está haciendo gestiones para llegar hasta aquí, la Agte. Gemisse Rosado trabaja en el turno de 4:00 a.m. a 12:00 del día, el Tnte. Iván Vega De Jesús viene de camino y la Agte. Damaris Pérez se encuentra en Alemania.

Hay un planteamiento del abogado en cuanto a los términos, surge del acta del 19 de abril de 2006 que hoy es el último día de términos, sobre eso nadie recurrió, siendo las 2:33 de la tarde el único testigo presente es el testigo Eli Cesar Sálamo Pérez que fue traído ya que se encuentra confinado.

La Defensa somete el asunto con el planteamiento solicitando desestimación.

Hace constar el Tribunal que este caso es para verse por jurado, hay que presentarle todos los testigos a los jurados, eso es parte del debido proceso por lo que se DESESTIMAN los casos al amparo de la REGLA 64 N DEL P.C.

Dispone el Tribunal que se excuse a los candidatos a jurado.

Notifíquese el acta al Fiscal por si va a recurrir."

Insatisfecho, el Ministerio Público recurrió ante el Tribunal de Apelaciones, mediante recurso de *certiorari*. En dicho recurso señaló como único error que el Tribunal de Primera Instancia abusó de su discreción al desestimar las acusaciones por alegada violación a los términos de juicio rápido. Alegó, que dicho foro erró al basar su determinación, en que era una exigencia del debido proceso de ley que todos los testigos anunciados por el Ministerio Público estuvieran presentes al momento de iniciar el juicio y de seleccionar al jurado. El Tribunal de Apelaciones confirmó el dictamen recurrido. En esencia, el foro intermedio resolvió que el Ministerio Público no había demostrado justa causa para la demora.[4]

No conteste con dicho dictamen, el Ministerio Público acude ante nos mediante recurso de *certiorari* y sostiene que el Foro Apelativo Intermedio cometió el siguiente error:

**Erró el Honorable Tribunal de Apelaciones al confirmar la desestimación del caso decretada por el Tribunal de Primera Instancia por una alegada violación a los términos de juicio rápido, habida cuenta de que el Ministerio Público expresó su disposición de ver el juicio aún en ausencia de algunos de los testigos de cargo; constituyendo así su actuación un claro abuso de discreción.**

---

[4] El Juez López Feliciano emitió un voto disidente. Dicho magistrado entendió que no procedía la desestimación de las acusaciones que descansaban sobre el acusado por constituir un abuso de discreción por parte del Tribunal de Primera Instancia.

La controversia suscitada nos brinda la oportunidad de determinar si procede la desestimación de una causa criminal por violación al derecho a juicio rápido, al amparo de la Regla 64(n)(4) de Procedimiento Criminal, *supra*, cuando el Ministerio Público exterioriza su disponibilidad de comenzar el juicio con aquellos testigos que estuvieren disponibles el último día de los términos; y si el debido proceso de ley requiere que todos los testigos anunciados por el Ministerio Público estén presentes al comienzo del juicio, en el proceso de selección del jurado.[5]

---

[5]     En el caso de *Rabell Martínez v. Tribunal Superior*, 101 D.P.R. 796 (1973), este Tribunal, **escuetamente, en dos oraciones**, parece haber resuelto parte de la controversia traída ante nos. Allí la defensa solicitó la desestimación de los cargos a la luz de la Regla 64(n)(2) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Este Foro resolvió, que como la moción de desestimación presentada por la defensa se hizo verbalmente el mismo día del juicio y cerca de dos años y medio después del acto de lectura de acusación, ello era motivo suficiente para denegar dicha moción de desestimación. El Tribunal enfocó su contención, en que se hizo caso omiso de los requisitos que exigen las Reglas 63 y 65 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, en el sentido de que la moción de desestimación debía presentarse al momento de hacer alegación de no culpable o antes de alegar y que además debía constar por escrito y estar firmada por el acusado o su abogado. Dichos pronunciamientos cobran relevancia en el caso de autos, toda vez que, en éste, el mismo día señalado para iniciar el juicio, la defensa hizo la petición de desestimación bajo la Regla 64(n)(4) de Procedimiento Criminal, *supra*.

Empero, el caso de autos va más allá, pues, aquí no está en controversia si se cumplieron o no los requisitos de las Reglas 63 y 65 de Procedimiento Criminal, *supra*, **lo que está planteado es si hay una violación al derecho a juicio rápido y al debido proceso de ley cuando el último día de los términos no están presentes todos los testigos anunciados por el Ministerio Público, al momento de la desinsaculación del jurado, a pesar de que éste expresa su disponibilidad de ver el caso con los testigos que tiene disponible.**

Cabe destacar que la controversia que presenta el caso de autos, es una que ha sido interpretada en ocasiones por el Tribunal de Apelaciones. Véase, *Pueblo v. Franco Pou*, KLCE200600368. En este último, el Tribunal de Apelaciones señaló que no constituye una exigencia onerosa del tribunal, requerir al Ministerio Público la presencia de los testigos en el proceso de desinsaculación, para que los prospectos jurados lo observaran y se expresaran con el fin de evitar que existiera alguna relación que pudiera afectar el veredicto. Sin embargo, acotó que tal exigencia no era necesaria en dicho caso ya que se vería por Tribunal de Derecho. *Íd*. En cuanto al derecho a juicio rápido, determinó que no había una violación a tal derecho porque aunque el Ministerio Público no contaba con toda la prueba de cargo, el juicio ya había comenzado puesto que los acusados

Vista la petición de *certiorari*, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.

**II.**

El derecho de todo acusado a un juicio rápido está consagrado en la Constitución de Puerto Rico.[6] Art. II, Sec. 11, Const. Puerto Rico, L.P.R.A., Tomo 1. Véanse, *Pueblo v. Miró González, 133 D.P.R. 813, 817 (1993); Hernández Pacheco v. Flores Rodríguez, 105 D.P.R. 173, 177-178 (1976).* Este derecho también se encuentra plasmado en la primera cláusula de la Sexta Enmienda de la Constitución Federal.[7]

Hemos reiterado que el derecho a juicio rápido cobra vigencia desde que el imputado de delito es detenido o está sujeto a responder (*held to answer*). *Pueblo v. Cartagena*, 152 D.P.R. 243, 248 (2000); *Pueblo v. Candelaria*, 148 D.P.R. 591, 597 (1999); *Pueblo v. Miró González, supra, pág. 818; Pueblo v. Rivera Colon, 119 D.P.R. 315, 321-322 (1987);* Pueblo v. Rivera Tirado, 117 D.P.R. 419, 431 (1986). Así, este Foro ha

---

renunciaron a su derecho por jurado, se juramentó la prueba disponible y el Ministerio Público comenzó la exposición inicial de su teoría. *Íd.* Es decir, el Tribunal de Apelaciones apoyó su decisión en que el juicio ya había comenzado. Así, vemos como existe una proclividad por el foro apelativo intermedio, a los efectos de que si el juicio es por jurado, es necesario que estén presentes todos los testigos de cargo en el proceso de desinsaculación, para que pueda iniciarse el juicio y se evite una violación al derecho a juicio rápido. Por tanto, somos del criterio de que la controversia traída a nuestra consideración debe trascender los hechos del caso de autos y amerita ser resuelta de forma definitiva por medio de Opinión para así pautar una norma que arroje luz a los foros inferiores en futuros conflictos de la misma naturaleza.

[6] Nuestra Constitución reza: "[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público…" 1 L.P.R.A. *supra.*

[7] La Constitución Federal, en lo relevante, lee de la siguiente manera: "En todas las causas criminales, el acusado gozará del derecho a un juicio rápido y público…". Enmda VI, Const. EE.UU., L.P.R.A., Tomo 1.

interpretado que en nuestro ordenamiento procesal penal un ciudadano queda "sujeto a responder" por la comisión de un delito desde el momento en que un juez determina causa probable para arrestar, citar o detener a dicho ciudadano. *Pueblo v. Guzmán Meléndez*, 161 D.P.R 137, 152-153 (2004). Es decir, cuando el imputado es arrestado o porque el estado pone en movimiento su mecanismo procesal, exponiendo a éste a una convicción. *Pueblo v. Carrión Rivera,* 159 D.P.R. 633 (2003). Véase, E. L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unídos*, 1ra ed., Colombia, Forum Pub., 1992, Vol. II, sec. 12.1, pág. 130. Es en ese momento que la acción penal se inicia y "el tribunal adquiere jurisdicción sobre la persona del imputado". O. E. Resumil de Sanfilippo, *Procedimiento Criminal*, 63 Rev. Jur. U.P.R. 363, 378 (1994).

También hemos reconocido que en virtud del derecho a juicio rápido se promueve un interés dual. *Pueblo v. Cartagena*, *supra*, pág. 249; *Pueblo v. Arcelay Galán*, 102 D.P.R. 409, 414 (1974). Por un lado: 1) se procura proteger al acusado contra su detención opresiva; 2) se minimizan sus ansiedades y preocupaciones; 3) se reducen las posibilidades de que su defensa se afecte. *Pueblo v. Valdés*, 155 D.P.R. 781, 789 (2001); *Pueblo v. Rivera Tirado*, *supra*, pág. 432. Por otro lado, el derecho a juicio rápido responde a las exigencias sociales de enjuiciar con prontitud a quienes son acusados de violentar sus leyes. *Pueblo v. Miró González*, *supra*, pág. 817.

No cabe duda que el derecho a juicio rápido es de carácter fundamental. *Pueblo v. Valdés*, *supra*, pág. 791;

*Pueblo v. Rivera Arroyo*, 120 D.P.R. 114, 119 (1987); *Pueblo v.
Reyes Herrans*, 105 D.P.R. 658, 660 (1977); *Jiménez Román v.
Tribunal Superior de P.R., 98 D.P.R. 874, 876 (1970).* Véanse,
al respecto, los casos federales, *U.S. v. Marion*, 404 U.S. 307
(1971); *Barber v. Page*, 390 U.S. 719 (1969); *Klopfer v. North
Carolina*, 386 U.S. 213 (1967). No obstante, el carácter
fundamental de este derecho, no es omnímodo. *Pueblo v. Rivera
Arroyo*, *supra*, pág. 119; *Pueblo v. Rivera Navarro, 113 D.P.R.
642,* 644 (1982). Más bien es un derecho que requiere tomar en
cuenta las circunstancias que rodean cada reclamo del mismo.
*Pueblo v. Reyes Herrans, supra, pág. 660.* Es decir, se trata
de un derecho que puede ser compatible con cierta tardanza o
demora. *Pueblo v. De Jesús Rivera*, 157 D.P.R. 136, 146 (2002);
*Pueblo v. Santa Cruz Bacardi*, 149 D.P.R. 223, 238 (1999);
*Pueblo v. Rivera Tirado*, supra, pág. 433; *Hernández Pacheco v.
Flores Rodríguez*, *supra*, pág. 177.

Consecuentemente, el derecho a juicio rápido comporta un
carácter variable y flexible. *Pueblo v. Guzmán Meléndez*,
*supra*, pág. 153; *Pueblo v. Valdés*, *supra*, pág. 790; *Pueblo v.
Rivera Tirado*, *supra*, pág. 433.[8] Por conducto del hilo
conductor de flexibilidad que caracteriza al derecho a juicio
rápido, este Tribunal ha manifestado asiduamente, que al
determinar una violación a tal derecho, no estamos ante un

---

[8] El Informe de la Cámara de la Carta de Derechos, expuso que "[e]l derecho
a un juicio rápido y público está garantizado por la enmienda sexta de la
Constitución de Estados Unidos y el artículo 2 de la Carta Orgánica.
Recomendamos la misma norma general y flexible que contienen esas
disposiciones constitucionales, reafirmando el principio, para que las
leyes y la administración lo cumplan en sus consecuencias especificas". 4
Diario de Sesiones de la Convención Constituyente, pág. 2569 (1951).

ejercicio de "tiesa aritmética" en el que la inobservancia del término, por si sola, constituye una violación al derecho a juicio rápido o conlleva la desestimación de la denuncia o la acusación. *Pueblo v. Candelaria*, *supra*, págs. 597-598. Por eso, la pesquisa de si se ha infringido o no ese derecho no debe descansar exclusivamente en una regla inflexible adherida a medidas de calendario que impida la ponderación de todos los intereses en juego. *Íd.*, pág. 598; *Pueblo v. Ramos* Álvarez, 118 D.P.R. 782, 791 (1987). El enfoque es más bien de tipo pragmático y responde a la naturaleza inherente de la dinámica del derecho a juicio rápido. *Pueblo v. Rivera Arroyo*, *supra*, pág. 118; *Pueblo v. Rivera Tirado*, *supra*, pág. 433.

El derecho a juicio rápido ha sido reglamentado en las disposiciones de la Regla 64(n) de Procedimiento Criminal, *supra*. En lo pertinente al caso de autos, dicho precepto expresamente dispone que se puede solicitar la desestimación de una acusación o denuncia cuando:

> "(n) [E]xisten una o varias de las siguientes circunstancias, a no ser que se demuestre justa causa para la demora o a menos que la demora se deba a la solicitud del acusado o a su consentimiento:
>
> (4) Que el acusado no fue sometido a juicio dentro de los ciento veinte (120) días siguientes a la presentación de la acusación o denuncia." Regla 64(n)(4) de Procedimiento Criminal, *supra.*

Según se desprende del propio texto de la Regla 64(n) de Procedimiento Criminal, ante un reclamo de un acusado de que se han excedido o van a exceder los términos fijados por la misma, el tribunal debe examinar si existió justa causa para

la demora o si ésta se debió a la solicitud del acusado o a su consentimiento. *Pueblo v. Santa Cruz Bacardi*, *supra*, págs. 238-239; *Pueblo v. Rodríguez Santana*, 146 D.P.R. 860, 878 (1998); *Pueblo v. Rivera Colon*, *supra*, pág. 325; *Pueblo v. Montezuma*, 105 D.P.R. 710, 712 (1977); *Jiménez Román v. Tribunal Superior de P.R.*, *supra*, pág. 883. El Ministerio Público tiene el peso de la prueba para demostrar la existencia de justa causa para la demora o la renuncia expresa, voluntaria y con pleno conocimiento de este derecho por parte del imputado, o que el imputado ha causado la tardanza. *Pueblo v. Guzmán*, *supra*, pág. 156; *Pueblo v. Valdés*, *supra*, pág. 791.

Para determinar lo que constituye justa causa bajo la Regla 64(n) de Procedimiento Criminal, *supra*, el análisis debe realizarse caso a caso. *Pueblo v. Valdés*, *supra*, pág. 790. Además, el Ministerio Público no puede descansar en meras alegaciones, generalidades o conclusiones. *Pueblo v. Carrión Roque*, 99 D.P.R. 362, 363 (1970).

En cuanto a la renuncia al derecho a juicio rápido, hemos manifestado que por tratarse de un derecho fundamental la renuncia al mismo debe ser expresa y no presunta, voluntaria y efectuada con pleno conocimiento de causa. *Pueblo v. Cartagena*, *supra*, pág. 253; Pueblo *v. Rivera Arroyo*, *supra*, pág. 120. De igual forma, el acusado renuncia a su derecho a juicio rápido si no presenta una moción de desestimación al efecto correspondiente el día de la vista en que debe hacer valer su derecho. *Íd.*

Con respecto a la renuncia al derecho a juicio rápido, tanto en *Pueblo v. Tribunal Superior*, 103 D.P.R. 732 (1975) como en *Pueblo v. Delgado* Terrón, 100 D.P.R. 153 (1971), este Tribunal tuvo oportunidad de atender reclamos de violación al mencionado derecho, al amparo de la Regla 64(n)(4) de Procedimiento Criminal, *supra.* En ambos casos expresamos que no se vulnera el derecho de un acusado a un juicio rápido cuando se señala la vista del juicio, con el consentimiento expreso del acusado, fuera del término de ciento veinte días establecido en la Regla 64(n)(4). *Pueblo v. Tribunal Superior*, *supra*, pág. 734; *Pueblo v. Delgado Terrón*, *supra*, pág. 156.[9]

Por otro lado, la Regla 64(n)(4) de Procedimiento Criminal, *supra*, en ocasiones ––como en el presente caso–– interrelaciona con la Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual estatuye que:

> "Una resolución declarando con lugar una moción para desestimar no será impedimento para la iniciación de otro proceso por el mismo delito a menos que el defecto u objeción fuere insubsanable, o a menos que tratándose de un delito menos grave (*misdemeanor*) dicha moción fuere declarada con lugar por alguno de los fundamentos relacionados en la Regla 64(n)".

Por tal razón, es importante tener en cuenta cómo el derecho a juicio rápido está concatenado a la facultad que nuestro ordenamiento procesal le reconoce al Ministerio Público de volver a incoar, por segunda vez, un nuevo proceso

---

[9] Véanse, en situaciones similares, los casos estatales del estado de Illinois, *People v. Turner*, 128 Ill. 2d 540, 553 (1989); *People v. Reimolds, 92 Ill. 2d 101, 106* (1982), donde el Tribunal Supremo de dicho estado resolvió que cuando la defensa y el estado expresamente acuerdan un señalamiento para el juicio, posterior a los términos del derecho a juicio rápido, se le atribuye a la defensa la renuncia al derecho a juicio rápido.

contra un imputado de delito grave. Esa coyuntura entre ambos preceptos, se ha razonado por este Tribunal al señalar, que el hecho de que los derechos del acusado no sean prisioneros de la tiesa aritmética, lo demuestra la propia Regla 67 de Procedimiento Criminal, *supra*. Esto es así, porque esta última, permite la presentación de una nueva acusación en casos de delitos graves. *Pueblo v. Reyes Herrans*, *supra*, págs. 664-665. De esta forma, el que pueda presentarse una nueva acusación en casos de delitos graves demuestra que el término de ciento veinte días establecido en la Regla 64 de Procedimiento Criminal, *supra*, no es el único factor determinante para lucubrar una violación al derecho a juicio rápido que propugna la Constitución. *Íd.*

A fin de ponderar las reclamaciones de violación al derecho a juicio rápido, este Tribunal, en múltiples ocasiones, ha aplicado esencialmente cuatro criterios extraídos de la jurisprudencia federal,[10] a saber: (1) la duración de la tardanza; (2) las razones para la dilación; (3) si el acusado invocó oportunamente el derecho a juicio rápido, y (4) el perjuicio resultante de la tardanza. *Pueblo v. Guzmán*, *supra*, págs. 154-155; *Pueblo v. Candelaria Vargas*, *supra*, pág. 598.[11]

---

[10]  Véase, *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[11] Véase, además, como distintos analistas estadounidenses han discutido estos criterios, C.H. Whitebread y C. Slobogin, *Criminal Procedure–An Analysis of Cases and Concepts*, 5ta ed., New York, U.S., Foundation Press, 2008, sec. 25.04, pág. 705; W.R. LaFave, J.H. Israel, N.J. King, *Criminal Procedure*, 2da ed., St. Paul, Minnesota, West Publishing Co., 1999, Vol. 4 sec. 18.2, págs. 674-685; *The Right to a Speedy Trial*, 20 Stan. L. Rev. 476, 478 (1968); A. G. Amsterdam, *Speedy Criminal Trial: Rights and Remedies*, 27 Stan. L. Rev. 525-543 (1975); G. P. N. Joseph, *Speedy Trial Rights Inapplication*, 48 Fordham L. Rev. 611-656 (1980).

En cuanto a la tardanza, hemos expresado que la dilación, es decir, la mera inobservancia del término, *per se*, no necesariamente acarrea una violación al derecho a juicio rápido, ni conlleva la desestimación de la denuncia o la acusación. *Pueblo v. Valdés*, *supra*, pág. 793; *Pueblo v. Candelaria Vargas*, *supra*, pág. 599. La desestimación no debe concederse, sin antes realizar un análisis ponderado del balance de los criterios esbozados. *Pueblo v. Valdés*, *supra*, pág. 792. A su vez, hemos acogido lo expresado por el Prof. Ernesto L. Chiesa Aponte y reiterado que **una dilación mínima es requisito de umbral** para que prospere un planteamiento de violación a juicio rápido.[12]    Véanse, *Pueblo v. Guzmán*, *supra*, pág. 155; *Pueblo v. Valdés*, *supra*, pág. 793; *Barker v. Wingo*, *supra*, págs. 530-531. Véase, además, E. L. Chiesa, *op. cit.*, Vol. II, sec. 12.1, pág. 141; *The Georgetown Law Journal-Annual Review of Criminal Procedure*, 37 Geo. L.J. Ann. Rev. Crim. Proc. 209, 373-374 (2008).[13] Es decir, la dilación

---

[12] En *Pueblo v. Guzmán*, *supra*, pág. 155, este Tribunal, citando al Profesor Ernesto L. Chiesa expresó que: "[E]l "balance" como método adjudicativo para evaluar un planteamiento de violación al derecho a juicio rápido, supone que el análisis no se interrumpa en un factor y sí se complete con el análisis de todos los factores. Aunque parezca que uno o dos factores han inclinado ya la balanza en una dirección, conviene terminar el análisis. Ninguno de los factores es decisivo, de suyo. **Si puede sostenerse que el primer factor -la magnitud de la tardanza-es uno de umbral, en el sentido de que se requiere una dilación mínima para activar el derecho a juicio rápido; ese término sería el establecido por estatuto o reglamentación.**"

[13] Tanto el Tribunal Supremo Federal como las cortes federales, han reiterado la misma conclusión al aplicar el criterio de la dilación o duración de la tardanza. En síntesis han sostenido que hasta que no haya alguna dilación presuntamente perjudicial, no hay necesidad de indagar en los restantes factores del balance para determinar violación al derecho a juicio rápido. *Dogget v. United States*, 505 U.S. 647, 651-652 (1992); *U.S. v. Frye*, 372 F.3d 729, 736 (5to Cir. 2004); *United States v. Maxwell*, 351 F.3d 35, 40 (1er Cir. 2003); *U.S. v. Schreane*, 331 F.3d 548, 553 (6to Cir. 2003); *U.S. v. Brown*, 325 F.3d 1032, 1034 (8vo Cir. 2003); *U.S. v.*

en exceso de los términos estatuidos por la Regla 64(n) de Procedimiento Criminal, *supra*, es lo que genera la necesidad de realizar el balance de los cuatro criterios mencionados. *Pueblo v. Guzmán*, *supra*, pág. 155; *Pueblo v. Valdés*, *supra*, pág. 793. Véase, E. L. Chiesa, *op. cit.*, Vol. II, sec. 12.1, 12.2, págs. 141, 162-163. En cuanto al cómputo de la dilación, el Profesor Chiesa nos ilustra al comentar que "hay que distinguir si se trata de una dilación en acusar, tras detención, o una dilación en someter al acusado a juicio, o una dilación en el transcurso del juicio, o una dilación en sentenciar". *Íd.*, pág. 141. En lo pertinente, el término para someter al acusado a juicio comienza a decursar con la presentación del pliego acusatorio. *Íd.*, pág. 142. Esto debe entenderse a la luz de la Regla 67 de Procedimiento Criminal, *supra*. Por eso, como apunta el Profesor Chiesa, el tiempo relacionado a anteriores acusaciones que fueron desestimadas no se debe tomar en cuenta. *Íd.*

Con relación al segundo factor, de ocurrir una dilación excesiva y un reclamo oportuno del imputado, el Ministerio Público debe probar la existencia de justa causa. *Pueblo v. Guzmán*, *supra*, pág. 156. Para que exista justa causa, la demora debe enmarcarse en parámetros de razonabilidad. *Pueblo v. Valdés*, *supra*, pág. 791; *Pueblo v. Rivera Colón*, *supra*, pág. 323. Queda excluida como justa causa la demora intencional y opresiva. *Pueblo v. Reyes Herrans*, *supra*, pág. 664. Cuando se trata de demoras institucionales (congestión en

---

*Murillo*, 288 F.3d 1126, 1132 (9no Cir. 2002); *U.S. v. Grimmond*, 137 F.3d 823, 827 (4to Cir. 1998).

el calendario del tribunal, que los paneles de jurado no estén listos, enfermedad de un juez o el receso por vacaciones del tribunal, entre otros), también se le imputan al Estado, teniendo que demostrar justa causa. *Jiménez Román v. Tribunal Superior*, *supra*, pág. 883. No obstante, las demoras institucionales que no tengan por objeto el perjudicar al imputado o acusado, se evaluaran con menos rigurosidad que las demoras intencionales. *Pueblo v. Candelaria*, *supra*, pág. 599; *Pueblo v. Rivera Tirado*, *supra*, pág. 435. Véase, E. L. Chiesa, *op. cit.*, Vol. II, sec. 12.1, págs. 143-145.[14]

En cuanto al tercer factor, según se ha interpretado por este Foro, la invocación oportuna del derecho a juicio rápido debe hacerse antes de vencer los términos y puede ser renunciada, como bien ya señalamos, únicamente de forma expresa. Véanse, *Pueblo v. Cartagena, supra*, pág. 253; *Pueblo v. Arcelay Galán*, *supra*, págs. 415-146.[15]

Finalmente, con respecto al criterio de perjuicio, hemos determinado que el imputado no tiene que demostrar estado de indefensión sino que basta demostrar el perjuicio sufrido. *Pueblo v. Guzmán*, *supra*, pág. 156; *Pueblo v. Esquilin Maldonado*, 152 D.P.R. 257, 264 (2000). A su vez, el perjuicio sufrido por el acusado con la dilación tiene que ser específico, no puede ser abstracto ni apelar a un simple cómputo de rigor matemático, tiene que ser real y sustancial.

---

[14] Véase, además, D. Nevares, *Sumario de Derecho Procesal Penal Puertorriqueño*, 7ma. Ed. Rev., San Juan, P.R., Instituto para el Desarrollo del derecho, Inc., 2004, págs. 134-135.

[15] Véase, además, E. L. Chiesa, *op. cit.*, Vol. II, sec. 12.1, págs. 147-151.

*Pueblo v. Rivera Tirado*, *supra*, pág. 438. El Profesor Chiesa sobre este particular comenta que es el acusado quien tiene que establecer el perjuicio sufrido a causa de la dilación. Distinguiéndose esto de la justa causa para la dilación, en la que le corresponde al Ministerio Público persuadir al Tribunal. E. L. Chiesa, *op. cit.*, Vol. II, sec. 12.2, pág. 157.

## III.

La Constitución de Puerto Rico expresamente consagra como paradigma, un "sistema republicano" de gobierno. Art. I, Sec. 2, Const. Puerto Rico, L.P.R.A., Tomo 1.[16] Esto es, que el andamiaje del Gobierno de Puerto Rico, está montado sobre el cimiento del principio básico de "separación de poderes" entre la Ramas Ejecutiva, Legislativa y Judicial. Véanse, *Silva v. Hernández Agosto*, 118 D.P.R. 45 (1986); *Romero Barceló v. Hernández Agosto*, 75 F.3d 23 (1996). Como regla general, se entiende que la doctrina de separación de poderes significa que la función judicial sólo puede ser llevada a cabo por la Rama Judicial, y de la misma manera, las labores no judiciales deben ser dejadas para la correspondiente actuación de las otras ramas. *Colón Cortés v. Pesquera*, 150 D.P.R. 724, 752 (2000). De igual forma, el Tribunal Supremo Federal ha sostenido que una rama del gobierno no puede usurpar las

---

[16] Nuestra Constitución en su Art. I, Sec. 2, *supra,* establece que: "El gobierno del Estado Libre Asociado de Puerto Rico tendrá forma republicana y sus Poderes Legislativo, Ejecutivo y Judicial, según se establecen por esta Constitución, estarán igualmente subordinados a la soberanía del pueblo de Puerto Rico".

facultades de otras ramas sin ocasionar daño. *Union Pac. R. Co. v. U.S.*, 99 U.S. 700, 718 (1878).

Cónsono con lo anterior, este Tribunal ha reiterado que es el Poder Ejecutivo quien tiene el deber de implantar las leyes penales. Véanse, en general, *Pueblo v. Castellón*, 151 D.P.R. 15 (2000); *Pueblo v. Quiñones Rivera*, 133 D.P.R. 332 (1993); *Pueblo v. González Malave*, 116 D.P.R. 578 (1985); *Pueblo v. Tribunal Superior*, 94 D.P.R. 59 (1967). Por eso, hemos reafirmado, que en nuestra jurisdicción la facultad y responsabilidad de investigar los hechos delictivos y la decisión de a que persona acusar y procesar criminalmente y por qué delito, recae en la persona del Secretario del Departamento de Justicia de Puerto Rico y de los fiscales bajo su supervisión; poseyendo estos funcionarios **amplia discreción** en el descargo de sus funciones. *Pueblo v. Castellón*, *supra*; *Pueblo v. Dávila Delgado*, 143 D.P.R. 157, 170 (1997); *Pueblo v. Quiñones Rivera*, *supra*, pág. 338; *Pueblo v. Pérez Casillas*, *supra*, pág. 710. Véase, E. L. Chiesa, *op. cit.*, Vol. II, sec. 20.2, págs. 576-578.[17] Ahora bien, dicha discreción no es absoluta, sino que está limitada por consideraciones de índole constitucional y de política pública. *Pueblo v. Pérez Casillas, supra*, pág. 712; *Pueblo v. Dávila Delgado*, *supra*,

---

[17] Igual discreción le reconoce el Ordenamiento Federal a los fiscales al momento de decidir acusar y procesar a una persona. Véanse, *Newton v. Rumery*, 480 U.S. 386, (1987); *Wayte* v. *United States*, 470 U.S. 598 (1985); *United States* v. *Goodwin*, 457 U.S. 368 (1982); *Bordenkircher* v. *Hayes*, 434 U.S. 357 (1978). Las decisiones emitidas en estos casos, uniformemente han reconocido que los tribunales le deben deferencia a las decisiones de los fiscales para acusar y procesar a algún acusado. La razón para tal deferencia está sustentada en que la decisión de acusar raras veces es sencilla para un fiscal. Además, son los fiscales y no los tribunales los que deben evaluar la solidez e importancia de un caso entre otras cosas. *Newton v. Rumery*, *supra,* pág. 396.

págs. 170-171. Así por ejemplo, "la decisión de procesar no puede estar basada en clasificaciones impermisibles, como raza y religión." *Pueblo v. Dávila Delgado*, *supra*, pág. 171. Citando a, Chiesa, *op cit.*, Vol. II, sec. 20.2, pág. 578.

Como apunta el Profesor Ernesto L. Chiesa, "[c]orresponde al Ministerio Fiscal, como representante del Poder Ejecutivo, hacer la determinación de si somete acusación y por cuál delito. De ordinario esta decisión dependerá de la evidencia disponible contra el sospechoso o imputado…" E. L. Chiesa, *op. cit.*, Vol. II, sec. 20.2, pág. 576. Por eso, se ha reconocido que la decisión de iniciar el proceso penal conlleva distintos elementos entre los cuales el más común e importante es la suficiencia de la evidencia. Véanse, W. R. LaFave, J. H. Israel, N. J. King, *op. cit.*, Vol. 4, sec. 13.1(b), págs. 6-7; C. H. Whitebread y C. Slobogin, *op. cit.*, sec. 21.02, pág. 705. Con respecto a la suficiencia de la evidencia, no es posible establecer categóricamente cuánta evidencia es requerida para justificar la decisión del Ministerio Público de acusar y procesar a un sospechoso de delito. Más bien, como medida práctica, el fiscal deberá poseer evidencia admisible que denote alta probabilidad de culpabilidad, lo que dependerá de cada caso. W. R. LaFave, J.H. Israel, N. J. King, *op. cit.*, Vol. 4, sec. 13.1(b), pág. 7.

Por lo tanto, el Estado es quien decide si con la evidencia que posee puede probar su caso. En ese sentido, el Ministerio Público tiene la potestad de procesar al acusado,

indistintamente de la cantidad de prueba que finalmente decida ofrecer, si entiende que puede prevalecer.[18]

Por otro lado, sabido es que la función del Poder Judicial es la de interpretar las leyes y la Constitución. *Silva v. Hernández Agosto, supra,* págs. 54-55. Por eso, este Tribunal ha expresado que la facultad de interpretar la Constitución y las leyes es un atributo indelegable de la Rama Judicial. *Colón Cortés v. Pesquera, supra,* pág. 754. *Figueroa Ferrer v. E.L.A.,* 107 D.P.R. 250, 278 (1978); *Santa Aponte v. Ferré Aguayo,* 105 D.P.R. 670, 671 (1977). De hecho, al Poder Judicial se le delegó entre otros, solucionar los conflictos entre partes privadas y públicas. *Negrón Soto v. Gobernador,* 110 D.P.R. 664, 666 (1981).

La facultad de exégesis que posee el Poder Judicial, es consustancial con el juicio discrecional que puede ejercer para resolver controversias que lleguen ante su consideración. Véanse, en general, *García v. Asociación,* 165 D.P.R. 311 (2005); *Pueblo v. Castellón, supra; Pueblo v. Ramos Álvarez, supra; Pueblo v. Ortega,* 125 D.P.R. 203 (1990). Como ya hemos expresado, discreción significa tener poder para decidir en

---

[18] Nótese, que nuestro Ordenamiento Jurídico no discrimina en cuanto al número o cantidad de prueba que pueda presentarse en un juicio. Por eso, nuestra Regla 10(D) y (E) de Evidencia disponen que: "La evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que por ley otra cosa se disponga; El tribunal o jurado no está obligado a decidir de conformidad con las declaraciones de cualquier número de testigos, que no llevaren a su ánimo la convicción contra un número menor u otra evidencia que le convenciere. 32 L.P.R.A. Ap. IV. Así, este Tribunal ha resuelto que un solo testigo es suficiente para probar un caso más allá de duda razonable, aunque se enfrente a un número mayor de testigos. *Pueblo v. García Félix,* 90 D.P.R. 158, 159 (1964); *Pueblo v. Pérez,* 65 D.P.R. 592, 594 (1946). Véase, R. Emmanuelli, *Prontuario de Derecho Probatorio Puertorriqueño,* 2da ed., Santo Domingo, República Dominicana, Editora Corripio, 2005, págs. 153, 158.

una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *García v. Padró*, 165 D.P.R. 324, 334 (2005); *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990). Sin embargo, en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. *Íd.*, pág. 211; *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964). Es decir, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera. *García v. Padró*, *supra*, págs. 334-335.

Existen ciertas guías que se han delimitado para fijar cuando un tribunal sentenciador ha incurrido en abuso de discreción. En lo pertinente, hemos señalado que un tribunal de justicia incurre en abuso de discreción, *inter alia*: cuando el juez, en la decisión que emite no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *García v. Padró*, *supra*, pág. 336.; *Pueblo v. Ortega*, *supra*, págs. 211-212.

Es norma trillada que un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción.

*S.L.G. Flores, Jiménez v. Colberg*, res. el 20 de mayo de 2008, 174 D.P.R.___(2008), 2008 T.S.P.R. 90, 2008 J.T.S. 110; *Colón Santos v. Coop. Seg. Mult. P.R.*, res. el 25 de febrero de 2008, 173 D.P.R.___, 2008 T.S.P.R. 32, 2008 J.T.S. 53; *Meléndez Vega v. Caribbean Ints. News*, 151 D.P.R. 649, 664 (2000); *Ortiz Rivera v. Agostini*, 92 D.P.R. 187, 193 (1965).

**IV.**

En armonía con la normativa proyectada, pasamos a resolver las controversias planteadas para determinar si hubo una violación al derecho a juicio rápido y al debido proceso de ley.

El Ministerio Público sostiene que la desestimación de las acusaciones por parte del Tribunal de Primera Instancia, fue un abuso de discreción, al intervenir indebidamente con su prerrogativa de determinar la forma o manera de presentar los casos, toda vez que se allanó a celebrar el juicio con la prueba disponible y las presunciones evidenciarías en su contra. *A contrario sensu*, la parte recurrida se reafirma en que hubo una violación al derecho a juicio rápido y al debido proceso de ley. Aduce esencialmente que dado que el caso se vería por jurado, era preciso que el 21 de agosto de 2006 (por ser el último para comenzar la celebración del juicio) estuvieran en sala todos los testigos de cargo con el fin de presentarlos al jurado antes del comienzo del juicio para evitar cualquier conflicto de interés que pudiera existir entre los jurados y los testigos. Además, apunta que si bien es cierto que el Ministerio Público decide para su caso a

quien sentar a declarar y la prueba a utilizar, una vez anuncia los testigos en la denuncia, si no los utiliza, está obligado a ponerlos a disposición de la defensa.

Comencemos pues con la aplicación de los criterios enunciados anteriormente para determinar si ocurrió alguna violación al derecho a juicio rápido. El primer factor es neurálgico por ser de umbral. ¿Ocurrió o no alguna dilación en exceso a los términos al derecho a juicio rápido? La respuesta es en la negativa. Como se desprende de los autos, el 21 de agosto de 2006 fue la fecha señalada para celebrarse el juicio. Esa fecha excedía lo preceptuado por la Regla 64(n)(4) de Procedimiento Criminal, *supra*, para la celebración de juicio rápido. Sin embargo, la defensa consintió a que se celebrara ese día. Somos de opinión que el hecho de que la defensa expresará que asentía a que el juicio se pautara para el 21 de agosto de 2001 con la condición de que ese fuera el último día de los términos para la celebración del juicio rápido, es prueba de la renuncia expresa que hiciera dicha parte. Esa actuación colocó como día final para la celebración del juicio, el 21 de agosto de 2006.[19]

El análisis de los restantes factores no es necesario por no darse el requisito de umbral de la tardanza o dilación. A la luz de la aplicación esgrimida, este Tribunal colige, que

---

[19] De los hechos se desprende que la segunda presentación de las acusaciones contra el recurrido, tomo lugar el día 7 de marzo de 2006 y que el 8 de marzo de ese mismo año se celebró el acto de lectura de acusación. Sin embargo, los 120 días que tenía el Ministerio Público, a partir del 8 de marzo de 2006, para someter al imputado a juicio, quedaron interrumpidos el 19 de abril de 2006, cuando la Defensa se allanó a un nuevo señalamiento fuera de los 120 días que estatuye la Regla 64(n)(4) de Procedimiento Criminal, *supra*.

en efecto, el Tribunal de Primera Instancia incidió al desestimar las acusaciones en contra del recurrido a la luz del derecho a juicio rápido.

En segundo lugar, resolvemos que la determinación del foro de instancia confirmada por el foro intermedio, interfirió indebidamente con la discreción del Ministerio Público de acusar y procesar al acusado. Es decir, se afectó la facultad del Ministerio Público de presentar la prueba (testigos) que deseaba utilizar con independencia de la cantidad. Al así actuar, no se guardó deferencia alguna a la potestad ejecutiva de acusar y procesar a quien infringe la ley para hacerla cumplir.

De otra parte, es meritorio señalar, que la Regla 16(5) de Evidencia, 32 L.P.R.A. Ap. IV.,[20] es el mecanismo disponible para el acusado cuando el Ministerio Público decide no utilizar en el juicio los testigos previamente anunciados. En *Pueblo v. Arzuaga*, 160 D.P.R. 520, 532-533 (2003), expresamos que una de las instancias en que surge el derecho del acusado a obtener las declaraciones de los testigos de cargo, ocurre a la terminación de la presentación de la prueba del Ministerio Público, cuando este renuncia a alguno de los testigos previamente anunciados por tratarse de prueba acumulativa. En este caso el Ministerio Público, luego de poner a estos

---

[20] Esta regla dispone que "toda **evidencia** voluntariamente suprimida resultará adversa si se ofreciere." Regla 16(5) de Evidencia, *supra*. *Cubero Vélez v. Insurance Co. of P.R.*, 99 D.P.R. 748, 751-752 (1971); *Murcelo v. H.I. Hettinger & Co.*, 92 D.P.R. 411, 432 (1965); *Chico de la Rosa v. Goetz*, 90 D.P.R. 316, 320 (1964). La **evidencia** voluntariamente suprimida por el fiscal sería el testimonio de un testigo anunciado. Véase, E. L. Chiesa, *Artículos: Procedimiento Penal*, 68 Rev. Jur. U.P.R. 241, nota al calce 29, (1999).

testigos a disposición de la defensa para que los utilice, o no, conforme a su mejor criterio, deberá entregarle a esta copia, si alguna, de la declaración jurada prestada por los testigos que han renunciado. De esta forma se evita que entre en vigor la presunción establecida en las Reglas de Evidencia Regla 16(5), *supra*, a los efectos de que, de haber declarado este testigo, se consideraría que su testimonio le hubiese sido adverso al Ministerio Fiscal. Véase, *Pueblo v. Quiñones Ramos*, 99 D.P.R. 1, 4 (1970). Igualmente resolvimos en *Pueblo v. Rivera*, 145 D.P.R. 366, 379 (1998), cuando señalamos que si el fiscal no utiliza a un testigo de cargo (anunciado como tal en la acusación o denuncia) en ninguna vista, ni siquiera en el juicio, el Ministerio Público tiene la obligación de poner esos testigos de cargo a disposición de la defensa para evitar que se active la presunción de que, de haber declarado el testigo, su testimonio le hubiese sido adverso al Pueblo.

De lo anterior surge con meridiana claridad, que el derecho de la defensa a tener acceso a los testigos que el Ministerio Público decida no utilizar, no es un derecho absoluto. De ahí, que si el Ministerio Público no hace o puede hacer tal gestión, tendrá en su contra la presunción de la Regla 16(5) de Evidencia, *supra*. Es decir, es el Ministerio Público quien tiene la prerrogativa de decidir si pone a los testigos no utilizados en el juicio en favor de la defensa o si deja que la presunción de evidencia le aplique con el correlativo efecto pernicioso en la prueba de cargo y el caso. Por tal, la defensa en el caso de autos no le asiste la razón

al alegar que el Ministerio Público debía poner a su disposición los testigos anunciados que no se presentaron o no se pudieron presentar el día del juicio. Esto es así, porque el Ministerio Público expresamente asintió a que la presunción de evidencia se les aplicará a los testigos de cargo que no comparecieron a la vista, conforme surge de la propia Minuta del 21 de agosto de 2006.

Es forzoso colegir que, los foros *a quo*, incidieron al desestimar las acusaciones contra el recurrido. Dichos magistrados obviaron el hecho de que no había vencido el término a juicio rápido porque precisamente se encontraban en el último día de los términos. Por lo tanto, su determinación se abstrajo del derecho. El Ministerio Público exteriorizó su voluntad de ver el caso con los testigos disponibles. Tan es así, que de forma palmaria asumió la responsabilidad de que a los testigos de cargo se les aplicará la presunción de que dicha prueba le sería adversa conforme la Regla 16(5) de Evidencia, *supra.* Por eso, el Tribunal de Primera Instancia abusó de su discreción al desestimar la acción penal en contra del recurrido.

Los tribunales inferiores también erraron al adjudicarle demasiado peso y valor a la dicotomía jurado-testigo. Es decir, calibraron preponderantemente el hecho de que se trataba de un juicio por jurado, acotando que era necesario que todos los testigos fueran presentados a los candidatos a jurado antes que comenzara el juicio (durante el proceso de desinsaculación o selección de jurado). No tomaron en

consideración que en el caso de autos, el Ministerio Público puntualizó su disponibilidad para ver el juicio con la prueba que tenía disponible en sala. Esto, a pesar de que los testigos que se encontraban de camino hacia el tribunal, nunca llegaran. De esta forma, los foros apelados no tenían justificación alguna para desestimar las acusaciones, ya que su fundamento primordial, sobre la necesidad presencial de todos los testigos al momento de seleccionar al jurado, no tenía cabida ante el allanamiento del Ministerio Público de ver el caso con la prueba que tenía en sala.

No obstante, sin restarle mérito a lo antes dicho, entendemos que es lisonjera la oportunidad que nos brinda el caso de autos, para examinar si es una exigencia del debido proceso de ley que todos los testigos estén presentes al momento de comenzar el juicio para la selección del Jurado.

Después de haber realizado un riguroso análisis, no hemos encontrado en nuestras Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, disposición alguna que avale dicha contención. Tampoco, podemos concluir que sea un requisito del debido proceso de ley que se satisfaga tal exigencia. *A contrario sensu*, resolvemos que exigirle al Ministerio Público la presencia de todos los testigos en el proceso de desinsaculación, le impondría al estado una carga demasiado onerosa e innecesaria que obstaculizaría su deber constitucional de hacer cumplir la ley en contra de los que la violen.

El debido proceso de ley concerniente al procedimiento criminal significa que un ciudadano solamente puede ser investigado y procesado mediante un proceso justo. Véase, E. L. Chiesa, *op. cit.*, Vol. II, sec. 10.0, págs. 24-25. Corolario de este principio es el derecho de todo acusado a un juicio justo e imparcial. Véase, *Íd.*, sec. 10.6, pág. 80. A la luz de tal principio, los tribunales, *a quo*, resolvieron en el caso de autos, que es necesario que todos los testigos estén presentes al momento de comenzar el juicio contra un acusado, en el proceso de desinsaculación, para evitar la selección de algún jurado parcializado por motivo de que pueda estar relacionado con el acusado de alguna manera. Dichos foros erraron al concluir de esa manera.

En nuestro Ordenamiento Jurídico, existen mecanismos que permitirían evitar la selección de algún jurado indeseado por estar relacionado de alguna manera con un testigo, sin requerir la presencia de este último. Así, por ejemplo, el propio "procedimiento de desinsaculación", (*voir dire*), le permite a las partes y al juez indagar con preguntas a los potenciales miembros del jurado, para así evitar la selección de un candidato a jurado que pueda tener su juicio obnubilado o denote visos de parcialidad. Véanse, *Pueblo v. Hernández Delgado*, 116 D.P.R. 427 (1990); *Pueblo v. Jiménez Hernández*, 116 D.P.R. 632 (1985). De ahí, el que hayamos reconocido que "[e]l procedimiento de desinsaculación del jurado es una de las etapas mas críticas e importantes de un juicio criminal por cuanto el mismo es uno de los mecanismos mediante los

cuales se pretende garantizar que el jurado que intervendrá en el proceso como juzgador supremo de los hechos será uno imparcial, capacitado y libre de prejuicios". *Íd.*, pág. 635. Véase, además, *Duncan v. Louisiana*, 391 U.S. 145, 151 (1968). Precisamente, esa es la razón de ser de la Regla 119 de Procedimiento Criminal, 34 L.P.R.A. Ap. II,[21] la cual autoriza tanto al magistrado que preside el proceso, y a los abogados de las partes para que le formulen a los candidatos potenciales a jurados las preguntas que entiendan pertinentes a su capacidad para actuar. *Pueblo v. Jiménez Hernández*, *supra*, págs. 637-638. Por eso, un *voir dire* pormenorizado por parte del juez y los respectivos representantes legales de las partes, subsana la ausencia física de todos los testigos al momento de la selección del jurado.

Además, hay otras salvaguardas para que el veredicto que emita el jurado sea imparcial. Las Reglas 126 y 127 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, proveen para que el tribunal discrecionalmente ordene que se llame a uno o más jurados suplentes. Estos se podrán utilizar en cualquier momento anterior al sometimiento final del caso al jurado, si uno de los jurados muriese, se enfermase o **tuviese que ser relevado por causa suficiente**. De igual manera, la Regla 144(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone que el tribunal podrá ordenar la disolución del jurado antes del veredicto si se comete algún error de derecho o se incurre

---

[21] La Regla 119 de Procedimiento Criminal, *supra*, dispone en lo pertinente que: "[e]l tribunal examinará y formulará al jurado las preguntas pertinentes a su capacidad para actuar. El tribunal permitirá a las partes efectuar un examen adicional a los jurados potenciales".

en alguna irregularidad durante el proceso que, a juicio del tribunal, le impida al jurado rendir un veredicto justo e imparcial. Como señala el Profesor Chiesa: "[e]sta regla constituye el vehículo estatutario para hacer valer el derecho del acusado a la terminación del juicio cuando la continuación es incompatible con el concepto de "jurado 'imparcial' componente esencial del derecho constitucional a juicio por jurado". E. L. Chiesa, *op. cit.*, Vol. II, sec. 15.5, pág. 322. De esta forma, si el problema surge con un miembro del jurado en particular, no debe disolverse al jurado si hay jurados suplentes o si el acusado renuncia válidamente al jurado de doce miembros.[22] *Íd.*

De lo anterior podemos razonar que, luego de que los jurados pasan el cedazo de la desinsaculación, si surge que alguno de ellos no puede ser completamente imparcial por estar o haber estado relacionado de alguna manera con algún testigo, dicho jurado puede sustituirse con un suplente. De no poderse dar la sustitución por carencia de suplentes, entonces queda disponible la vía de la disolución del jurado como remedio final para preservarle al acusado su derecho a un juicio justo e imparcial.

Para despachar la contención exigida por el Tribunal de Primera Instancia y avalada por el Tribunal de Apelaciones con relación a la dicotomía jurado-testigo, queremos resaltar el caso de *Pueblo v. Ramos Álvarez, supra.* En dicho caso luego de

---

[22] Véase, *Pueblo v. Camacho Vega*, 111 D.P.R. 497, 499 (1981). En este caso se resolvió que un acusado puede renunciar a su derecho de ser juzgado por un jurado compuesto por doce personas y, en su lugar, acceder a que lo juzgue un jurado compuesto por un número menor de personas.

haber seleccionado al jurado y luego de haber concluido el examen de un testigo, el Ministerio Público llamó a un segundo testigo que no aparecía anunciado en el pliego acusatorio conforme lo establece la Regla 52 de Procedimiento Criminal, *supra*.[23] La defensa objetó la presentación de dicho testigo debido a que el mismo no aparecía anunciado en el pliego acusatorio como testigo de cargo. Luego de eso, el Ministerio Público informó al tribunal que dicho testimonio, como el de un tercer testigo que se disponía presentar, eran indispensables para su caso, por lo que solicitaba que se incluyeran los mismos, se suspendiera el proceso y se le diera a la defensa un término para prepararse. La defensa por su parte se opuso a la suspensión. El tribunal concedió el petitorio del Ministerio Público. Posteriormente, **el tribunal llamó al panel de jurado y les informó que el proceso por una cuestión de derecho tenía que suspenderse y que el mismo continuaría en una fecha posterior**. Al **reanudarse** el proceso, el tribunal **sustituyó** a un miembro del jurado con motivo de una situación particular. La defensa señaló, *inter alia*, que el Tribunal de Primera Instancia había incidido al suspender el proceso, luego de haber comenzado el desfile de la prueba de cargos, para que el Ministerio Publico incluyera otro testigo. En ese caso este Foro concluyó que el Tribunal de Primera Instancia tenía discreción para permitir la inclusión

---

[23] La Regla 52 de Procedimiento Criminal, *supra*, dispone que antes del juicio, el Ministerio Publico le entregará al acusado "una copia de la acusación con una lista de los testigos, antes de que se le requiera que formule alegación alguna." Este requisito legal tiene como fundamento que el acusado pueda prepararse adecuadamente para su defensa. *Hoyos Gómez v. Tribunal Superior*, 90 D.P.R. 201, 203 (1964).

en el juicio de testigos que no fueron anunciados previamente por el Ministerio Público a la defensa. En esos casos, el remedio es darle a la defensa tiempo para prepararse. Pero si la defensa no alega sorpresa, perjuicio o necesidad de tiempo adicional para refutar las declaraciones del nuevo testigo de cargo, entonces no es necesario que se le conceda tiempo adicional para prepararse. Por eso, en dicho caso, este Tribunal concluyó que el error aducido se había cometido, porque no procedía la suspensión del juicio, sino que el caso debió haber seguido su curso normal ya que la defensa no adujo sorpresa, perjuicio o necesidad de tiempo adicional. Véase, *Pueblo v. Santiago*, 56 D.P.R. 109 (1940), donde este Tribunal llegó a la misma conclusión que en el caso recién discutido de *Pueblo v. Ramos Álvarez*, *supra*, ante unos hechos y controversia similar.

A la luz de los susodichos precedentes, es de notarse que el foro de instancia como parte de su discreción puede proseguir un proceso ya iniciado, en el cual el Ministerio Público presenta testigos no anunciados a la defensa en el pliego acusatorio. Esto, sin necesidad de reiniciar el proceso de selección de jurado. Es decir, el que se permita presentar un testigo no anunciado, no acarrea por necesidad la disolución del jurado o un nuevo juicio. Por tal razón, si el tribunal de instancia entiende que no se ha socavado el derecho de un acusado a un juicio justo e imparcial, no tiene la obligación de volver a realizar el proceso de desinsaculación del jurado y puede continuar con el mismo

jurado. Le corresponde al foro de instancia asegurarse que los nuevos testigos presentados no tengan relación o puedan tener algún interés con el jurado previamente seleccionado. Véanse, de forma ilustrativa, *State v. Brown*, 177 N.C. App. 177, (2006); *State v. Smith*, 291 N.C. 505, (1977).[24] En fin, si se permite traer testigos luego de comenzado el proceso judicial, es decir, luego de haber seleccionado al jurado y estos haber juramentado, por lo mismo no es necesario requerir que todos los testigos que se pretendan utilizar, estén presentes al momento de la desinsaculación del jurado.

Finalmente, no es a este Tribunal a quien se le delegó la función de legislar.[25] Por eso, en ausencia de expresión legislativa exigiendo la presencia de los testigos al momento de comenzar con el proceso de desinsaculación y en ausencia de justificación que sostenga dicha exigencia como una necesaria para que el proceso sea uno justo e imparcial conforme el debido proceso de ley, resolvemos que es improcedente requerirle al Ministerio Público que procure la presencia de todos los testigos al momento de la desinsaculación del Jurado.

---

[24] En *State v. Smith*, *supra*, el Ministerio Público llamó a unos testigos que no había previamente anunciado a la defensa. En dicho caso el juez condujo un *voir dire* del jurado para determinar si fiscalía había obrado de mala fe. El *voir dire* arrojó como resultado que los jurados no conocían a los testigos que el Ministerio Público no había anunciado o mencionado durante la selección del jurado. Por lo tanto, el tribunal determinó que fiscalía no pretendía poner como testigo a alguien que pudiera tener alguna relación o influencia sobre el jurado. Concluyó que no hubo mala fe por parte del Ministerio Público. Similarmente ocurrió en *State v. Brown*, *supra*.

[25] El Artículo III, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico reza: "El Poder Legislativo se ejercerá de dos Cámaras—el Senado y la Cámara de Representantes—cuyos miembros serán elegidos por votación directa en cada elección general." Art. III, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1.

**V.**

Por las razones expuestas anteriormente, resolvemos que incidió el Tribunal de Apelaciones al confirmar la desestimación del caso decretada por el Tribunal de Primera Instancia, por entender que no hubo violación al derecho a juicio rápido, al debido proceso de ley ni al derecho a juicio por jurado de la parte recurrida. Por lo tanto, revocamos la sentencia del Tribunal de Apelaciones que confirmó al Tribunal de Primera Instancia. Por eso, ordenamos al foro de instancia iniciar la celebración del juicio en contra de la parte recurrida.

Se dictará sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

Efraín Rivera Santiago

    Recurrido

Certiorari

CC-2007-0459

SENTENCIA

San Juan, Puerto Rico, a 20 de agosto de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el presente caso al Tribunal de Primera Instancia para proceda conforme con lo aquí expuesto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada Rodríguez Rodríguez concurren sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo